UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
            v.                               :     **MEMORANDUM & ORDER**
                                             :     21-CR-336 (WFK)
ANDRES GARCIA OSORIO,                         :
                                             :
                           Defendant.        :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
On May 30, 2023, Defendant waived indictment and pled guilty to the sole count of the
Superseding Information charging him with interstate prostitution, in violation of 18 U.S.C. §
2422(a). ECF No. 61. The Court now sentences Defendant and provides a complete statement of
reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. §
3553(a). For the reasons set forth below, Defendant is hereby sentenced to 135 months of
incarceration, five years of supervised release with special conditions, forfeiture as outlined in the
plea agreement, and payment of a $100.00 special assessment.

## DISCUSSION

### I.      Background

In early 2018, law enforcement officers began investigating a sex trafficking organization

smuggling women into the United States and forcing them to engage in prostitution. Presentence

Investigation Report ("PSR"), ECF No. 64 ¶ 3. The law enforcement officers identified Defendant;

his brother and co-defendant, Armando Garcia Osorio ("co-Defendant"), and others[1] as operating

a business transporting women (hereinafter the "victims") from Queens, New York to other parts

of New York, New Jersey, and elsewhere within the United States to engage in prostitution. *Id.*

Defendant and his brothers not only transported the victims, but also acted as facilitators,

communicating with prospective clients and controlling the victims' availability, prices, and types

of services. *Id.* ¶ 6. They arranged meetings for the victims at the customers' locations. *See id.*

---

[1] The PSR indicates that a different brother of Defendant, Gelasio Garcia Osorio, was also involved in this activity
and has since been deported. PSR ¶ 8.

They also took a percentage—typically 50 percent—of the victims' earnings. *Id.* On average, the victims earned $40 for each 10-to-15-minute session, or $200 for an hourly session. *Id.* The victims were "forced to engage in" prostitution "with between 10 and 30 men daily." *Id.*

Defendant's and his brothers' sex trafficking enterprise involved at least six victims. *Id.* ¶¶ 7-26. While Defendant himself was only charged in connection with two of those victims – Jane Does #1 and #3 – he was personally involved in the transportation of four victims in total. ECF No. 61 ¶ 1; PSR ¶¶ 14-15, 20-26, 30.[2]

Jane Doe # 1:  Defendant severely physically and mentally abused Jane Doe #1, forcing her to engage in prostitution. *Id.* ¶ 7. Defendant met Jane Doe #1 when she was 17 years old, a year after she had moved to the United States from Mexico. *Id.* ¶ 7. Defendant and Jane Doe #1 began a relationship and eventually had a daughter together. *Id.* From January 2015 until October 2020, Defendant trafficked Jane Doe #1 in prostitution.[3] *Id.* Defendant regularly threatened, beat, and raped Jane Doe #1. *Id.* In one instance unrelated to the instant offense, Jane Doe #1 reported to the police on November 6, 2020 that Defendant punched her in the face with his closed fist, causing her face to swell and bruise. *Id.* ¶ 9. Jane Doe #1 reported to the police that Defendant sexually assaulted her and described Defendant's role in running a sex trafficking enterprise. *Id.* ¶ 8. According to the PSR, Jane Doe #1 overheard conversations between Defendant and his brothers discussing their sex trafficking enterprise, which included making Jane Doe #1 register cars in her name and purchase license plates that they could use for their enterprise. *Id.* ¶ 8.

Jane Doe # 3:  Defendant trafficked Jane Doe #3 and controlled and facilitated her prostitution for his own personal greed and profit. *Id.* ¶¶ 11-12. During the summer of 2020,

---

[2] According to the PSR, Defendant was not involved with Jane Does #2 and #5. PSR ¶¶ 10, 16-19. As such, information pertaining to those victims is excluded from this Memorandum.
[3] The PSR notes there is no information that Jane Doe #1 was a minor when Defendant trafficked her. PSR ¶ 7.

Defendant met Jane Doe #3, who was also born in Mexico. *Id.* ¶ 11. Jane Doe had previously been trafficked by an unrelated individual in Mexico, whom she managed to escape from after he sent her to the United States. *Id.* Once free from her previous trafficker, Jane Doe # 3 continued to work occasionally as a prostitute. *Id.* After meeting Jane Doe in 2020, Defendant drove her across New York, New Jersey, and Connecticut for prostitution appointments, during which she made $60 per appointment and split the profits with Defendant and another driver. *Id.* ¶ 12. In January 2021, law enforcement officers in Buffalo, New York stopped a car carrying Defendant after he and another individual had picked up Jane Doe #3 from an appointment. *Id.* ¶ 13. In the car, the officers found nearly $3,000 in cash, condoms, personal lubricant, and a "Mexican Tamales" card, which is used by sex trafficking drivers and people engaged in prostitution to provide clients with the drivers' contact information to facilitate prostitution appointments. *Id.*

Jane Doe # 4: Jane Doe #4 was born in Mexico and forced into prostitution by an unrelated sex trafficking organization in 2008 when she was approximately 18 years old. *Id.* ¶ 14. A year later, the organization smuggled Jane Doe #4 into the United States, where she worked as a prostitute along the East Coast. *Id.* Jane Doe #4 became familiar with Defendant, his co-Defendant, and an unindicted driver who worked closely with the brothers. *Id.* ¶ 15. The unindicted driver drove Jane Doe #4 to prostitution appointments in New Jersey every Sunday and Monday between 2010 and 2016. *Id.*

Jane Doe # 6: In or around 2016, Defendant began driving Jane Doe #6 to prostitution appointments. *Id.* ¶ 23. Not only did Defendant schedule her appointments, he also set her prices and controlled the profit she received. *Id.* ¶¶ 20; 23–26. As an example, the PSR describes a week of appointments in October 2018 to which Defendant drove Jane Doe #6. *Id.* During that time, Jane Doe #6 saw between 15 and 25 clients daily. *Id.* ¶ 23. Defendant set the prices she charged

3

at $40 to $50 for every 15 minutes of sex, except for Saturday when Defendant set the price at $70 or more for 15 minutes. *Id.* Defendant then forced Jane Doe #6 to give him the proceeds. *Id.* While he split them evenly with her; he made her pay him $300 for transportation and cover half the cost of their hotel rooms. *Id.* After this experience, Jane Doe #6 refused repeatedly to work for Defendant for several weeks. *Id.* ¶ 24. When Jane Doe #6 rejoined Defendant, they faced a client who became aggressive after Jane Doe #6 refused to be filmed by the client. *Id.* The client chased Defendant, who drove away, leaving Jane Doe #6 behind to hide until Defendant returned some time later. *Id.* Afterward, Jane Doe #6 again refused to work with Defendant, despite him calling nearly 10 times. *Id.* ¶ 25. By at least June 9, 2021, Jane Doe #6 was again communicating with Defendant, as he continued to schedule prostitution appointments for her, including across state lines. *Id.* ¶ 26.

On June 23, 2021, a grand jury returned a six-count Indictment charging Defendant with one count of Mann Act conspiracy, contrary to 18 U.S.C. § 2421, in violation of 18 U.S.C. § 371; one count of sex trafficking Jane Doe # 1, in violation of 18 U.S.C. §§ 1591(a)(1)-(2); two counts of Mann Act violations, in violation of 18 U.S.C. § 2421; and one count of distribution of prostitution proceeds, in violation of 18 U.S.C. §§ 1952(a)(1)(A) and 1952(b)(1). Indictment, ECF No. 1. The Indictment also contained criminal forfeiture allegations. *Id.* On June 24, 2021, agents from Homeland Security Investigations arrested Defendant as he walked to his car with a woman engaged in prostitution. PSR ¶ 27; Government Memorandum ("Gov't Mem.") at 2, ECF No. 67. On June 25, 2021, Magistrate Judge Lois Bloom arraigned Defendant on the Indictment, and he entered a plea of not guilty on all counts.

On May 30, 2023, Defendant pled guilty to the sole count of the Superseding Information, charging him with interstate prostitution, in violation of 18 U.S.C. § 2422(a). ECF No. 61.

4

Specifically, the Superseding Information stated that between approximately January 2015 and January 2021, Defendant "together with others, did knowingly and intentionally, persuade, induce, entice and coerce individuals, to wit: Jane Doe #1 and Jane Doe #3 . . . to travel in interstate and foreign commerce to engage in prostitution." *Id.* at 1. As part of the plea agreement, Defendant agreed not to file an appeal or otherwise challenge, under 28 U.S.C. § 2255 or any other provision, his conviction or sentence if the Court imposes a term of imprisonment of 188 months or below. Plea Agreement ¶ 4, ECF No. 62.

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II.     Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision, which this Court has done.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005). Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor . . . the district court's discretion." *Molina-Martinez v. United States*, 578 U.S. 189, 198-99 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*  "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal reference and quotation marks omitted).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a).  *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005).  It addresses each in turn.

## III.   Analysis

### A.   The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

#### 1.   <u>Family and Personal Background</u>

Defendant was born on March 3, 1986 in Oaxaca, Mexico to Serafin Garcia Cruz and Clara Cecilia Osorio.  PSR ¶ 66.  The PSR states Defendant had not informed his mother of his conviction because of her ongoing health problems, *id.*; however, Defendant's sentencing memorandum includes a letter of support from his mother, in which she states she is aware of his current situation and offers her support, Ex. A of Defendant Memorandum ("Def. Mem.") at 14-17, ECF No. 66.  The PSR states Defendant's father is aware of Defendant's conviction and remains supportive.  PSR ¶ 66.  Defendant has six siblings who reside in Oaxaca. *Id.* ¶ 67. Defendant's co-defendant brother is currently in custody at the Metropolitan Detention Center in

Brooklyn. *Id.* All of Defendant's siblings are aware of his conviction and remain supportive.
*Id.*

The PSR describes Defendant's childhood as marked by poverty and abuse. *Id.* ¶ 68.
Defendant was largely raised by his mother because his father left the family, provided no
financial support, and was an alcoholic. *Id.* However, his father would visit often and beat
Defendant on a weekly basis with sticks and bottles. *Id.* Defendant also reports facing
emotional abuse from his father as well as his maternal grandmother. *Id.*

Defendant moved from Mexico to the United States in 2005 or 2006. *Id.* ¶ 70. On March
5, 2012, Defendant was deported to Mexico. *Id.* Defendant illegally returned to the United
States in approximately 2012 before being deported again on November 2, 2019. *Id.* Defendant
illegally returned to the United States at some point later in 2019. *Id.*

Defendant has a daughter from a prior relationship. *Id.* ¶ 69. The daughter lives with her
mother in New York; however, Defendant provides the daughter with some financial support.
*Id.*

### 2. <u>Educational and Employment History</u>

Defendant completed primary school in Mexico. *Id.* ¶ 76. He left secondary school to
work full-time. *Id.* While in the United States, he took English courses. *Id.* He has held a
variety of jobs in Mexico and the United States, including in construction, food delivery, and the
restaurant industry. *Id.* ¶¶ 79-86.

### 3. <u>Prior Convictions</u>

Defendant has one prior felony conviction. *Id.* ¶ 59. In 2012, Defendant was arrested
and pled guilty to Possession of Methamphetamine (Felony) in Superior Court in Ventura,

7

California. *Id.* Defendant was not sentenced because he failed to appear and the court issued a

bench warrant, which remains active. *Id.*

The PSR also states that Immigration and Customs Enforcement ("ICE") agents arrested

Defendant in 2012 in California and in 2019 in Arizona for illegal reentry. *Id.* ¶¶ 63, 64.

However, defense counsel objects to the inclusion of these two arrests because, according to

Defendant, he was not the individual who was arrested and deported on those dates. Def. Mem.

at 7.

The PSR adds that Defendant illegally reentered the United States after his removal on

November 2, 2019, PSR ¶ 61, and that an ICE detainer has been lodged against him, *id.* ¶ 70.

### 4.   Medical and Mental Health

Defendant does not have any past or current health conditions, according to the PSR. *Id.*

¶ 73.

### 5.   Substance Abuse

Defendant reported that, between 2018 and 2020, he drank two beers weekly along with

tequila and whiskey. *Id.* ¶ 75. Defendant believes he consumed more alcohol than the average

person and that he had the habits of an alcoholic. *Id.* Defendant contends that treatment for

alcohol use could be useful for him. *Id.*

### 6.   Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the

instant offense. *See supra* Section I.

### B.   The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence

imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved operating a sex trafficking business, in which Defendant transported numerous women to various locations to engage in prostitution. In addition to organizing often dozens of prostitution appointments a day, Defendant also exploited these women by claiming up to half of their cash proceeds. Defendant used sexual threats and force—including rape—to compel at least one woman to engage in prostitution. The Court's sentence will deter Defendant and others from engaging in similar acts and justly punishes Defendant for his offense.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Superseding Information, charging him with interstate prostitution, in violation of 18 U.S.C. § 2422(a). ECF No. 61. Defendant faces a statutory maximum term of imprisonment of 20 years, which is to say 240 months, pursuant to 18 U.S.C. § 2422(a). Defendant also faces a minimum term of supervised release of five years. 18 U.S.C. § 3583(k). Defendant is eligible for not less than one but not more than five years of probation because the instant offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). If a term of probation is imposed, unless extraordinary circumstances exist, a fine, restitution, or community service must be imposed therewith. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces other potential penalties.  Defendant faces a maximum fine of $250,000.00 pursuant to 18 U.S.C. § 3571(b).  Defendant is also subject to the provisions of the Justice for Victims of Trafficking Act of 2015 ("JVTA"), 18 U.S.C. § 3014, which instructs the Court to assess an amount of $5,000.00, per count, on any non-indigent person or entity convicted of an offense under 18 U.S.C. Chapters 77, 109A, 110, 117; or Section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324).  *See* 18 U.S.C. § 3014.  However, the PSR notes Defendant's financial profile indicates he is unable to pay a fine or the mandatory JVTA special assessment.  PSR ¶ 90.  The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013.  Pursuant to 18 U.S.C. § 3663A, restitution in an amount to be determined shall be ordered in this case.  Following guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified, which is the case here.  However, the Court may hold an evidentiary hearing within 90 days after sentencing, pursuant to 19 U.S.C. § 3664(d)(5), to determine issues of restitution.

Defendant agreed, pursuant to the plea agreement, to the forfeiture of (i) property, real or personal, that was used or intended to be used to commit or to facilitate the commission of a violation of 18 U.S.C. § 2421; (ii) property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offense; and/or (iii) as a substituted asset; pursuant to 18 U.S.C. § 2428(a) and 21 U.S.C. § 853(p).  ECF No. 62 ¶ 7.

### D.    The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines."  18 U.S.C. § 3553(a)(4)(A).

10

Defendant's prior criminal convictions result in a criminal history score of one. PSR ¶ 60. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I. *Id.* All parties agree with this calculation,[4] PSR ¶ 60; Def. Mem. at 6; Gov't Mem. at 2.

In their sentencing memoranda, the U.S. Probation Office ("Probation"), the Government, and defense counsel disagree as to the applicable Guidelines offense totals.

Probation states that the most appropriate Guideline for the sole count of the Superseding Information is U.S.S.G. §2G1.1(d)(1), which states that "if the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction." PSR ¶ 28. The sole count charged Defendant with the interstate transportation of Jane Doe #1 and Jane Doe #3 to engage in prostitution. ECF No. 61.

Probation, therefore, states that the most appropriate Guideline for the sole count related to Jane Doe #1—referred to in the PSR as Count 1A—is U.S.S.G. §§2G1.1(c)(1) and 2A3.1(a)(2), which provides for a base offense level of 30. PSR ¶ 29. Pursuant to U.S.S.G. §2A3.1(b)(1), the offense level is increased by four levels because the offense involved conduct described in 18 U.S.C. § 2241(a), including use of force or threat to knowingly cause another person to engage in a sexual act. *Id.* Probation states that the most appropriate guideline for the sole count related to Jane Doe #3—referred to in the PSR as Count 1B— is U.S.S.G. §2G1.1(a)(2), which provides for a base offense level of 14. *Id.* Counts 1A and 1B are not

---

[4] Although defense counsel agrees with the criminal history calculations, defense counsel argues that the Court should not consider Defendant's two arrests in 2012 and 2019 for illegal reentry, as discussed in Section III(A)(3) because, according to Defendant, he was not the individual who was arrested and deported on those dates. Regardless, these two arrests do not affect Defendant's criminal history category.

grouped together pursuant to U.S.S.G. §3D1.2.  *Id.*  Using the Multiple Count Analysis pursuant

to U.S.S.G. §§3D1.4(a)-(c), Probation calculates that the units assigned to Count 1A and Count

1B do not result in an increase to the offense level.  *Id.* ¶¶ 50-52.

      Probation notes Defendant engaged in the interstate transportation of additional victims.

*Id.* ¶ 30.  However, because they are not named in the Superseding Information, Probation

contends this conduct should not be considered as part of the Guidelines calculations pursuant to

U.S.S.G. §1B1.3.  *Id.* ¶ 30.  Nevertheless, according to Probation, the additional victims are

grounds for an upward departure pursuant to U.S.S.G. §5K2.21 (Policy Statement). *Id.*

      Probation states that, pursuant to U.S.S.G. §3E1.1, three levels are decreased from the

total offense level for clearly demonstrated acceptance of responsibility—a one-level reduction

resulting from Defendant's timely notification to the Government of his intention to plead guilty

and a two-level reduction resulting from Defendant pleading guilty.  *Id.* ¶¶ 55, 56.  This results,

according to Probation, in a total offense level of 31.  *Id.* ¶ 57.  Using a total adjusted offense

level of 31 and a criminal history category of I, Probation calculates a Guidelines range of

imprisonment of 108 to 135 months.  *Id.* ¶ 92.

      Probation adds that there are two grounds for an upward departure.  *Id.* ¶¶ 110, 111.

First, Probation notes Defendant has never been held accountable for illegally reentering the

United States at least twice and this conduct could not be factored into the Guidelines

calculation.  *Id.*  ¶ 110.  Second, as previewed above, Probation notes there are additional victims

not named in the sole count of the Superseding Information, meaning they are not included in the

Guidelines calculation.  *Id.*  ¶ 111.  Therefore, Probation states the Court may consider

Defendant's illegal reentry as additional criminal conduct and Defendant's interstate

transportation of additional victims as the bases for an upward departure under U.S.S.G. § 5K2.21. *Id.* ¶¶ 110, 111.

The Government agrees with Probation that the base offense level is 30 pursuant to U.S.S.G. §§2G1.1(c)(1) and 2A3.1(c)(2). Gov't Mem. at 2. Additionally, the Government agrees with Probation that a four-point enhancement is warranted pursuant to U.S.S.G. §2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C. § 2241, specifically Defendant's use of violence against Jane Doe #1 to force her into prostitution. Gov't Mem. at 2, 4. The Government also notes Defendant stipulated to this conduct in the plea agreement. *Id.* at 4; ECF No. 62 at 3. The Government also agrees with Probation that a three-point reduction is warranted for acceptance of responsibility pursuant to U.S.S.G. §3E1.1. However, the Government argues that an additional two-point vulnerable victim enhancement is warranted pursuant to U.S.S.G. §3A1.1(b)(1). Gov't Mem. at 2. The Government also notes Defendant stipulated to this enhancement in the plea agreement. *Id.*; ECF No. 62 at 3. The Government, therefore, calculates a total offense level of 33. Gov't Mem. at 2. Using a total adjusted offense level of 33 and a criminal history category of I, the Government calculates a Guidelines range of imprisonment of 135 to 168 months. *Id.*

Defense counsel disagrees with the base offense level calculated by Probation and the Government. Def. Mem. at 6-7. At the sentencing hearing and in his memorandum, defense counsel argued Defendant's sexual abuse of Jane Doe #1 should be considered as domestic violence within the confines of their relationship, rather than acts in furtherance of Defendant's sex trafficking business. *Id.* Instead of relying on U.S.S.G. §2A3.1(a)(2)—criminal sexual abuse—for a base offense level of 30, defense counsel argues in favor of using U.S.S.G. §2G1.1(a)(2)—promoting a commercial sex act or prohibited sexual conduct with an individual

other than a minor—which provides a base offense level of 14. *Id.* at 7. Defense counsel states

Defendant should receive only a two-point reduction for his acceptance of responsibility. *Id.*

Defense counsel, therefore, calculates a total offense level of 12. *Id.* Using a total adjusted

offense level of 12 and a criminal history category of I, defense counsel calculates a Guidelines

range of imprisonment of 10 to 16 months.

The Court adopts the Guidelines calculations of the Government, finding a total offense

level of 33. The Court finds, based on a criminal history category of I, this results in Guidelines

range of imprisonment of 135 to 168 months.

* * *

Probation recommends the Court impose a sentence of 108 months of custody followed

by five years of supervised release with special conditions. Probation Recommendation at 1,

ECF No. 64-1. This is in addition to the mandatory $100.00 special assessment. *Id.* Probation

bases its recommendation on the following factors: Defendant's role in a sex trafficking

organization smuggling vulnerable women into the United States to force them into prostitution,

including transporting women across state lines and otherwise facilitating their prostitution

appointments; Defendant's prior felony conviction and lack of legal status in the United States;

and Defendant's upbringing in impoverished and abusive circumstances. *Id.* at 1-3. Finally,

Probation recommends Defendant be excused from the mandatory drug testing provisions of 18

U.S.C. §§ 3563(a)(5) and 3583(d) because Defendant poses a low risk of substance abuse. *Id.* at

1.

The Court adopts Probation's recommendation excusing Defendant from the mandatory

drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Government recommends the Court impose a sentence within the Guidelines range of 135 to 168 months of imprisonment. Gov't Mem. at 1. The Government bases that recommendation on the seriousness of Defendant's long-running business of interstate sex trafficking that exploited and abused women, and his use of violence and threats against at least one of the victims of the business to force her into prostitution. *Id.* at 1-2, 4-5. In particular, the Government argues that "the fact that the defendant is frivolously denying that he used violence against Jane Doe #1 in connection with the instant offense suggests that he is unlikely to be deterred unless he is given a significant sentence." *Id.* at 4.

Defense counsel recommends the Court impose a sentence of 16 months of custody. Def. Mem. at 8. At the sentencing hearing, defense counsel stated that the request for a 16-month sentence should not be read as disputing the Guidelines calculations by the Government or Probation, but instead as an argument for a downward variance from those calculations. Defense counsel argues in his briefing that such a sentence is sufficient because it takes into account the need to avoid an unwarranted sentencing disparity with Defendant's co-defendant brother who received a 16-month sentence for similar conduct, according to defense counsel; because Defendant will be deported after his sentence; and because Defendant faced emotional and physical abuse as a child. Def. Mem. at 8-12. Defense counsel objects to Probation's recommendation that Defendant shall refrain from contacting Jane Doe #1. *Id.* at 8. Defense counsel also argues the Court should not "over-emphasize general deterrence through the punishment of one person" and that "the deterrence of others should not be a relevant consideration." *Id.* at 9. Defense counsel also argues that "[c]onsidering recidivism as a factor in this sentencing is especially irrelevant" because Defendant "faces deportation to Mexico upon

the completion of his sentence. Thus, the public safety of citizens of the United States should not be a consideration for this sentence." *Id.* at 9-10.

This Court has read and considered the letters written by Defendant's loved ones, family, and supporters. Ex. A of Def. Mem. at 13-27. These letters describe Defendant's difficult upbringing, his diligent work ethic, and his financial support for his child and ailing family members. *Id.* At the sentencing hearing, defense counsel introduced a report from the Metropolitan Detention Center that describes Defendant's work ethic and positive performance reviews. Court Ex. 1. The Court appreciates the comments Defendant's advocates have made on his behalf.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation notes, pursuant to the Policy Statement to U.S.S.G. §5K2.21, additional victims are grounds for an upward departure. PSR ¶ 30.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel emphasizes the need to avoid an unwarranted sentencing disparity with Defendant's co-defendant brother, who received a 16-month sentence. Def. Mem. at 11-12. Nonetheless, Defendant's co-defendant brother pled guilty to different charges than Defendant

and did not stipulate to having engaged in conduct involving sexual abuse under 18 U.S.C. §

2241. *See* Presentence Investigation Report as to Armando Garcia Osorio, ECF No. 37. For the

reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors,

the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide

restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As noted in Section III(C),

restitution is mandatory in this case. However, the amount of restitution is not determinable yet

as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶

114. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should

not be ordered when losses incurred by the victim are not identified. The Court reserves its right

pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this

sentencing to determine the specific amounts owed to Defendant's victims.


### CONCLUSION

In accordance with the analysis above, the Court finds a sentence of 135 months of

incarceration followed by five years of supervised release with special conditions, forfeiture in

accordance with the plea agreement, and payment of a $100.00 special assessment is appropriate

and comports with the dictates of § 3553. The Court finds, moreover, this sentence is consistent

with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

17

The Court does not impose a fine or a JVTA special assessment because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 64, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 20, 2024
Brooklyn, New York